IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:15-CV-591-RJ

| | |
|---|---|
| H/S WILSON OUTPARCELS, LLC, )<br>)<br>Plaintiff/Counter Defendant, )<br>)<br>v. )<br>)<br>KROGER LIMITED PARTNERSHIP I, )<br>)<br>Defendant/Counter Claimant. ) | ORDER |

This matter is before the court on the motion for summary judgment of Kroger Limited Partnership I ("Defendant" or "Kroger"). [DE-36]. H/S Wilson Outparcels, LLC ("Plaintiff" or "H/S Wilson") filed a response in opposition [DE-48], and Kroger filed a reply [DE-52]. For the reasons that follow, the motion for summary judgment is granted in part and denied in part.

## I. STATEMENT OF THE CASE

On November 12, 2015, this action was removed from Wilson County Superior Court. [DE-1]. H/S Wilson asserts claims against Kroger for breach of contract and waste and seeks specific performance, monetary damages, and attorney's fees [DE-11] at 3–6, and Kroger asserts a counterclaim for breach of contract against H/S Wilson. [DE-5] at 4. The parties consented to magistrate judge jurisdiction, and the case was first assigned to Judge Swank and later to the undersigned. [DE-13]; Dec. 16, 2015 Text Order; Jan. 4, 2017 Text Order. After a period of discovery, Kroger filed the instant motion for summary judgment. [DE-36].

## II. STATEMENT OF FACTS

On May 2, 2000, H/S Wilson, the owner of the Wilson Mall in Wilson, North Carolina, entered into an agreement to lease property (the "premises") to Kroger. [DE-11] ¶¶ 1, 3. A grocery store was constructed on the premises, which Kroger operated until June 24, 2004, and despite the store closing, Kroger is obligated to continue maintaining the premises as required by the lease. *Id.* ¶¶ 7–8, 10. The lease agreement provides in relevant part that Kroger, as tenant,

> shall keep the Demised Premises in good order, condition and repair, ordinary wear and tear excepted, and shall promptly make or cause to be made any and all necessary or appropriate maintenance and repairs (herein collectively referred to as "Repairs"). All Repairs shall be at least equal in quality and class to the original work.

*Id.* ¶ 10 (quoting Ex. A [DE-11-1] ¶ 29).

In 2011, the store roof sustained damage from a severe storm. Dep. James Cooper ("Cooper Dep.") [DE-48-4] at 16:2–5, 35:3–7. By letter of June 30, 2011, H/S Wilson notified Kroger that the roof of the store was damaged and demanded that Kroger return the premises to "good order, condition and repair" as required under the lease. [DE-48-1]. Kroger obtained repair proposals in July and August of 2011, but apparently due to an oversight, no repairs were made to the roof until late in 2014. Cooper Dep. [DE-48-4] at 25:12–14, 36:11–17, 85:13–86:1; Pl.'s Ex. 2 [DE-48-2]; Pl.'s Ex. 3 [DE-48-3]. H/S Wilson sent a another letter to Kroger dated June 26, 2015, indicating it believed the repairs were insufficient and that Kroger was in violation of the lease. [DE-11-2] at 1–3. In September 2015, Kroger hired a contractor to "clean-up" the interior of the store, which included some mold remediation. Cooper Dep. [DE-48-4] at 30:10–24; Def.'s App'x to Reply, Ex. 1 [DE-52-1] at 4. However, H/S Wilson was not satisfied with Kroger's response and alleges Kroger failed to maintain the premises as required by the lease, resulting in active roof leaks, standing water, and excessive mold growth on the

2

premises. [DE-11] ¶¶ 11–12. H/S Wilson further alleges there are other signs of failure to maintain the premises, including rust, stained walls, peeled paint, and cracked windows. *Id.* ¶ 13.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has met its burden, the nonmoving party then must affirmatively demonstrate, with specific evidence, that there exists a genuine issue of material fact requiring trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

### IV. DISCUSSION

Kroger contends that H/S Wilson can present no facts to support its contention that Kroger failed to keep the premises in "good order, condition and repair" as required by the lease. Def.'s Mem. [DE-37] at 5–8. Specifically, Kroger argues that the grounds for the breach of contract claims are the failure to repair the roof resulting in active water leaks and the failure to remediate mold on the premises, and expert testimony is required regarding the "penetrability of the subject roof, or whether the subject premises required mold remediation, because such subjects are not within full understanding of lay persons." *Id.* at 6.

In response, H/S Wilson offers the sworn affidavit of Elizabeth Wilson, the Director of Property Management for Hull Property Group, who manages the premises for H/S Wilson. Pl.'s Mem. [DE-48] at 7–8; Aff. of Elizabeth Wilson ("Wilson Aff.") [DE-51]. Wilson was present for two inspections of the property in January and September 2016 and personally observed and photographed the condition of the building, including rust on the steel decking and rust holes, rusted and broken gutter, rust on steel columns, water stains on cinderblock walls, mold on interior painted surfaces, saturated roofing insulation, and displaced and buckled insulation boards. Wilson Aff. [DE-51] ¶¶ 5–8. H/S Wilson argues that Wilson's testimony, the photographic evidence, and the testimony of Kroger's own expert creates a question of material fact and that a reasonable person could conclude that the roof needs to be replaced. Pl.'s Mem. [DE-48] at 8. H/S Wilson further argues that an expert is not necessary to understand that rain exposure and prolonged water saturation lead to rust and decay and that the cause of the damage is not at issue because there is no dispute that the roof membrane was peeled back by the storm in 2011 and left open for three years allowing water to penetrate the roof. Id. at 10–11.

Kroger, in its reply, asserts that the evidence submitted by H/S Wilson is not competent to show that Kroger's repairs made to the premises in 2014 and 2015 were inadequate such that it is in violation of the lease. Def.'s Reply [DE-52] at 1–2. Specifically, Kroger argues that Wilson is inherently interested in the outcome of the litigation because she is employed by H/S Wilson; Wilson is not an expert and her testimony cannot be used to establish the significance of the rust and wetness she observed or that the roof requires replacement; and H/S Wilson has presented no evidence that Kroger "should be doing something differently with respect to its maintenance of the property" or that it is in violation of the lease. Id. at 4. Finally, Kroger argues that H/S Wilson's failure to designate an expert and the reliance on Wilson's lay

4

testimony contravenes the purpose and spirit of the Federal Rules of Civil Procedure and prejudices Kroger because its own expert had no opportunity to rebut Wilson's observations. *Id.* at 5–7.

The question before the court is whether Wilson's lay testimony, coupled with other evidence, is sufficient to create a genuine dispute as to any material fact, or whether expert testimony is required for H/S Wilson to prevail on its breach of contract claims. This case is in federal court on diversity jurisdiction and, as such, North Carolina substantive law and federal procedural law apply. *See In re C.R. Bard, Inc., MDL. No. 2187, Pelvic Repair Sys. Prod. Liab. Litig.*, 810 F.3d 913, 919 n.1 (4th Cir. 2016). Under North Carolina law, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract."[1] *Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d 735, 737 (2007) (internal quotations omitted).

Lay and expert testimony are governed by the rules of evidence, and the Federal Rules of Evidence and North Carolina Rules of Evidence regarding the proper scope of lay testimony are in accord. *State v. McClelland*, 781 S.E.2d 718, 2016 WL 223691, at *5 (N.C. Ct. App. 2016) ("Rule 701 of the North Carolina Rules of Evidence is 'indistinguishable' from Rule 701 of the Federal Rules of Evidence.") (citing *State v. Collins*, 216 N.C. App. 249, 256, 716 S.E.2d 255, 260 (2011)). The rule on opinion testimony by a law witness provides,

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

---

[1] H/S Wilson's waste claim is also based on Kroger's alleged failure to satisfy its obligations under the lease. Compl. [DE-11] ¶ 29.

5

> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701. "[L]ay opinion testimony must be based on personal knowledge" and "the perception of the witness," whereas an expert witness "must possess some specialized knowledge or skill or education that is not in possession of the jurors." *United States v. Johnson*, 617 F.3d 286, 292–93 (4th Cir. 2010) (citations omitted). The line between lay and expert testimony may be "a fine one," and while "Rule 701 forbids the admission of expert testimony dressed in lay witness clothing, [] it does not interdict all inference drawing by lay witnesses." *United States v. Perkins*, 470 F.3d 150, 155–56 (4th Cir. 2006) (citations omitted).

First, Kroger's contention that H/S Wilson can present no facts to support that Kroger failed to keep the premises in "good order, condition and repair" as required by the lease lacks merit. Wilson states in her affidavit that she observed the premises "on several occasions." Wilson Aff. [DE-51] ¶ 5. Specifically, on January 7, 2016, Wilson observed "[t]he roof was spongy and uneven," "[t]he gutter was rusted and broken," [t]here were several areas of noticeable rust coming through the recently painted underside of the steel decking, along with rust holes," "[t]here were rusty steel columns," and "[t]he cinderblock walls have water stains;" and on September 27, 2016, she observed "[m]old growing on interior painted surfaces," "[a]dditional rusted portions of the underside of the metal decking (beyond what was present in January 2016[])," "[r]usted steel roof decking on the upper side of the roof in at least three distinct areas of the roof," "[s]aturated insulation in at least three distinct areas of the roof," and "[d]isplaced and buckled insulation boards in several different areas." Wilson Aff. [DE-51] ¶¶ 6–7.

These statements are based on Wilson's personal knowledge gained from observing the premises on the specified dates, and no specialized skill or training is needed to opine that one

6

observed water, mold, or rust. *See Mock v. Cent. Mut. Ins. Co.*, 158 F. Supp. 3d 1332, 1343–44 (S.D. Ga. 2016) (scientific or specialized background was not required to know that water would have entered through the openings in the roof that the witness observed); *R & S Auto Sales v. Owners Ins. Co.*, No. 4:13-CV-479-RAW, 2015 WL 12434459, at *8 (S.D. Iowa Jan. 5, 2015) (denying defendant's summary judgment motion on claim for remediation of soot because it was "not dependent on expert testimony to prove the element of necessity" and "[s]oot is an observable condition the existence and extent of which can be established by lay testimony."); *see also Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 65 F.3d 166 (4th Cir. 1995) ("[E]xpert testimony not only is unnecessary but indeed may be properly excluded in the discretion of the trial judge if all the primary facts can be accurately and intelligibly described to the jury, and if they, as men of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them [as the experts].") (internal quotation marks omitted) (quoting *Salem v. U.S. Lines Co.*, 370 U.S. 31, 35 (1962)).

The instant case is also distinguishable from the case of *Guyther v. Nationwide Mut. Fire Ins. Co.*, 109 N.C. App. 506, 515, 428 S.E.2d 238, 243 (1993), cited by Kroger. In *Guyther*, the court determined that a "lay person does not possess the technical knowledge and skill required to form an opinion concerning the cause of the collapse of a building," 109 N.C. App. at 515, 428 S.E.2d at 243, but here the lay testimony at issue is not on a complex subject like the cause of a building collapse, but rather is the witness's perceptions that insulation was wet, walls were water stained and mold was present, and roof decking was rusted. Wilson Aff. [DE-51] ¶¶ 6–7. Based on Wilson's lay testimony, a jury of common understanding could reasonably conclude that the premises was not "in good order, condition and repair, ordinary wear and tear excepted" as required by the lease.

7

Kroger's argument that Wilson is inherently interested in the outcome of the litigation because she is employed by H/S Wilson fails because it goes to Wilson's credibility and the weight of her testimony, which are issues for the jury to decide. *See Summerlin v. Edgar*, 809 F.2d 1034, 1039 (4th Cir. 1987) ("Credibility of conflicting testimony is not, on a summary judgment motion, an issue to be decided by the trial judge.") (citing *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Cram v. Sun Insurance Office, Ltd.*, 375 F.2d 670, 674 (4th Cir. 1967)). Kroger's argument that H/S Wilson's failure to designate an expert and the reliance on Wilson's lay testimony contravenes the purpose and spirit of the Federal Rules of Civil Procedure is unsupported, and Kroger is not unduly prejudiced because it will have the opportunity to cross-examine Wilson at trial and to present its own witnesses to challenge her observations.

Next, the court is not persuaded by Kroger's argument that expert testimony is required regarding the "penetrability of the subject roof, or whether the subject premises required mold remediation, because such subjects are not within full understanding of lay persons." Def.'s Mem. [DE-37] at 6. There is no dispute that water entered the premises through the damaged roof over a period of three years prior to any repairs being made. *See* Cooper Dep. [DE-48-4] at 25:12–14, 36:11–17, 85:13–86:1. Kroger contends that it repaired all the roof leaks and cleaned up the resulting water damage including mold from the interior, and Kroger's expert, Fred Hash, testified that he determined there was no wet insulation under the roof because he walked across the roof and it was not spongy. Dep. of Frederick P. Hash, Jr. ("Hash Dep.") [DE-48-5] at 41:10–21. However, Hash also later testified that there "may be" wet insulation and that he did not inspect the insulation by taking "core" samples, which Hash explained was the best way to determine if the insulation is wet. *Id.* at 42:20–43:8, 83:15–24. Wilson testified that "[t]he roof

8

was spongy and uneven," and she observed "[s]aturated insulation in at least three distinct areas of the roof," "[d]isplaced and buckled insulation boards in several different areas," and "[m]old growing on interior painted surfaces." Wilson Aff. [DE-50] ¶¶ 6–7. Wilson's testimony in this regard is not beyond the scope of common understanding and creates an issue of material fact regarding the condition of the premises and whether Kroger's repairs were sufficient to bring the premises into compliance with the lease terms. *See 405 Condo Assocs. LLC v. Greenwich Ins. Co.*, No. 11 CIV. 9662 SAS, 2012 WL 6700225, at *6 (S.D.N.Y. Dec. 26, 2012) ("[I]t doesn't take an expert to see that roof flashing has peeled back, allowing water to penetrate a roof."); *McCall v. Norman*, 222 N.C. App. 635, 731 S.E.2d 276 (2012) (finding under the circumstances presented that "a lay person could properly form an opinion that excessive moisture entering the home caused the formation of mold which, in turn, rendered the premises uninhabitable and damaged Defendants' personal property.").

Kroger also argues that Wilson's testimony is insufficient to demonstrate the significance of the rust and wetness she observed. Def.'s Reply [DE-52] at 4. However, Kroger's own expert testified at his deposition as to the significance of rust and water in the roof. Hash testified that the damage from water getting into insulation is that the insulation "becomes no good," "loses its structural integrity," and loses its "thermal resistance to heat [and] cooling," Hash Dep. [DE-48-5] at 68:1–8, and that the rusting of the roof decking "would weaken the structural integrity," *id.* at 70:7–14. Hash also testified that the "recommended fix" for wet insulation was to "remove and replace it," *id.* at 73:21–23, and that rusted decking should be cleaned, primed, and rustproofed, or replaced if it has lost its structural integrity, *id.* at 73:24–74:14. Thus, there is evidence in the record that the jury is capable of understanding and from which the jury could conclude that the conditions observed by Wilson require repair or replacement based on Hash's

9

testimony in order to maintain the premises "in good order, condition and repair, ordinary wear and tear excepted" as required by the lease.

The court agrees with Kroger, however, that H/S Wilson has failed to present competent evidence that the entire roof requires replacement. Wilson provided no such opinion, and even if she had such testimony would likely extend beyond scope of lay testimony permissible under Rule 701. *See R & S Auto Sales*, 2015 WL 12434459, at *9 (concluding that "resolution of the issues pertaining to the necessity of the new roof requires more than the knowledge or experience a lay person could bring to bear."). Under the circumstances presented here, whether the roof is damaged beyond repair requires the technical or specialized knowledge of an expert, and the only expert opinion came from Kroger's expert Hash, who testified that he believed the roof did not need to be replaced in 2011 or in 2016. *Id.* at 76:17, 89:12–90:5.

In sum, H/S Wilson has presented sufficient evidence to create an issue of material fact as to whether Kroger failed to make the necessary roof repairs and interior remediation to maintain the premises in "good order, condition and repair," but failed to create an issue of material fact as to whether the roof requires total replacement.

## V. CONCLUSION

For the reasons stated herein, Kroger's motion for summary judgment [DE-36] is allowed in part and denied in part. Having considered the current posture of the case, referral of the case for court-hosted settlement conference at this time is appropriate. Accordingly, this matter is referred to Magistrate Judge Robert T. Numbers, II for the purpose of conducting a court-hosted settlement conference. Should the case not settle, the parties shall file a joint notice with proposed trial dates within 14 days of the conclusion of the settlement conference.

SO ORDERED, the 27th day of September, 2017.

                                                        Robert B. Jones, Jr.
                                                        United States Magistrate Judge